UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ROBERT C. BOLUS, SR., and
SOPHIE GREGORY,

    Plaintiffs,

v.                                                     CASE NO.: 8:08-cv-1957-T-23TBM

MORRISON HOMES, INC., d/b/a
MORRISON HOMES n/k/a TAYLOR
MORRISON SERVICES, INC.,

    Defendant.
_____/

## **ORDER**

The plaintiffs' sue (Doc. 45) the defendant for breach of contract and trespass. The defendant moves (Doc. 75) for summary judgment, which the plaintiffs oppose (Doc. 81).

### Background

The defendant builds and sells homes in the Silver Lake subdivision in Bradenton, Florida. On September 9, 2005, the plaintiffs and the defendant executed a purchase and sale contract (the "contract for sale") (Doc. 45-2) for a lot in Silver Lake. The parties signed an "Addendum to Contract and Restrictive Covenant" (the "addendum")[1] (Doc. 45-2 at 11), which provides in pertinent part that:

---

[1] The contract for sale contains several addenda, only one of which is involved in the parties' dispute. For ease of reference, this order describes the "Addendum to Contract and Restrictive Covenant" using the general term "addendum" but intends to refer only to the "Addendum to Contract and Restrictive Covenant" and no other addendum to the contract for sale.

> As a material inducement for Seller to enter into this contract, Buyer hereby affirmatively warrants and covenants that (s)he intends to occupy the home residence to be constructed pursuant to this contract or reservation as her(his) primary or secondary (vacation) residence, plans to reside therein, and does not plan to lease or sublet such residence to any other person. . . .
>
> . . .
>
> Additionally, Buyer shall not assign this agreement, nor any rights herein, nor advertise, market, list for sale, sell, transfer, assign, gift or otherwise convey the Property, or any interest therein, for a period of two years after the date of closing.

In November, 2005, the plaintiff, Sophie Gregory ("Gregory"), was diagnosed with cancer. Shortly after learning that Gregory had cancer, the plaintiff, Robert Bolus ("Bolus"), informed the defendant's agent, Eric Johnston ("Johnston"), that the plaintiffs wanted to "get out of the contract" for sale.[2] Bolus discussed the matter with Johnston and requested that the defendant allow the plaintiffs to "get out" of the contract for sale by (1) switching the contract for sale to an undeveloped lot, (2) assigning the contract for sale to a third party, or (3) canceling the contract for sale and returning the plaintiffs' deposit.[3] The defendant refused to assent to each request.[4] Instead, Johnston informed the plaintiffs that (1) the plaintiffs could cancel the contract for sale and forfeit the $39,000.00 deposit, or (2) the plaintiffs could agree to a release from the addendum containing the restrictive covenant.[5] The plaintiffs agreed to a release from the

---

[2] June 24, 2009, Deposition of Robert Bolus ("Bolus Depo.") at 26-27

[3] Bolus Depo. at 26-27; June 24, 2009, Deposition of Sophie Gregory ("Gregory Depo.") at 43-44.

[4] Bolus Depo. at 27; July 16, 2009, Deposition of Eric Johnston ("Johnston Depo.") at 47-48.

[5] Bolus Depo. at 28-32; Johnston Depo. at 47-48.

- 2 -

addendum, and the parties reduced the agreement to writing.[6] Johnston drafted a document, entitled "Change Order/Special Stipulations Addendum" (the "release"), which states only that "[a]s of 12/14/05, buyer is released from restrictive covenant agreement."[7] (Doc. 45-2)

Despite the lack of detail in the release, Bolus putatively believed that the release absolved the plaintiffs of any obligation under the addendum as well as the antecedent contract for sale provisions (1) prohibiting assignment,[8] (2) restricting the display of any "for sale" sign without prior approval of the homeowner's association,[9] and (3) prohibiting the purchaser's entry onto the property before closing without the seller's consent.[10] The defendant believed, however, that the release vitiated the addendum and no other part of the contract for sale.[11] The defendant intended to permit the plaintiffs to advertise and market in any manner—except as prohibited by the contract for sale—the property before closing.[12] Even though the parties interpret the release differently, the release purportedly "memorialize[s] the oral conversation and

---

[6] Bolus Depo. at 31-33.

[7] Johnston Depo. at 51.

[8] Bolus Depo. at 32-36. Under the section entitled "Miscellaneous," the contract states that "[t]his agreement may not be assigned." (Doc. 45-2, at 6)

[9] Bolus Depo. at 39.

[10] Bolus Depo. at 38.

[11] Johnston Depo. at 47-50.

[12] Johnston Depo. at 89-91.

- 3 -

agreement" that Bolus reached with the defendant through Bolus's conversation with Johnston.[13]

After speaking with Johnston but before signing the release (in approximately late November, 2005), Bolus began placing on the property "for sale" signs, each of which was promptly removed by an employee of the defendant.[14] Placing "for sale" signs on the property was the only method that the plaintiffs employed to market the property before closing.[15] After the removal of no less than four signs, Bolus confronted Johnston, who informed Bolus that the defendant's employees were "ordered to take the signs down."[16] Bolus received a telephone call warning Bolus not to post another sign on the property or the defendant would charge Bolus with trespassing. Additionally, before closing, the plaintiffs requested an estimate from a company that installs swimming pools, because the plaintiffs wanted to install a swimming pool in the backyard. The plaintiffs were informed that the backyard would not accommodate a "standard-size pool."[17] On December 30, 2005, the parties closed the sale and the defendant conveyed the property to the plaintiffs.[18]

---

[13] Bolus Depo. at 32, 40; Johnston Depo. at 47-49.

[14] Bolus Depo. at 40-42. Bolus testified that he told Johnston that Bolus intended to put up a sign advertising the property for sale. Bolus obtained each sign from a hardware store. Bolus Depo. at 42-51.

[15] Bolus Depo. at 57; Gregory Depo. at 80-81.

[16] Bolus Depo. at 40-52.

[17] Gregory Depo. at 101-04.

[18] Bolus Depo. at 54; Doc. 75 at ¶ 13.

After closing, Bolus placed on the property another sign, which was promptly removed by a "woman from the [homeowners] association."[19] The woman informed Bolus that the sign failed to comply with a homeowners association requirement. In response, the plaintiffs purchased a sign that complied with the requirement. The plaintiffs placed the sign on the property in January, 2006, ("within a matter of weeks" after closing) and the sign remained undisturbed on the property.[20] Placing a sign on the property was the only method that the plaintiffs employed to market the property after closing.[21] The defendant, sometime after closing, entered the plaintiffs' property and planted a tree in the backyard.[22]

In October, 2007, the plaintiffs initiated this action. In count one of the plaintiffs' second amended complaint, the plaintiffs allege breach of contract. Count three alleges trespass as a result of the defendant's entering the property to plant a tree in the middle of the backyard. A March 12, 2009, order (Doc. 50) dismissed count two for failure to state a claim.

## Discussion

### I. Breach of Contract

The defendant argues that the release is unenforceable because the release is a modification of the parties' contract and "must be supported by new consideration."

---

[19] Bolus Depo. at 52-53.

[20] Bolus Depo. at 53-56.

[21] Bolus Depo. at 63-65.

[22] Bolus Depo. at 81-82; Gregory Depo. at 98-99; Doc. 75 at ¶ 17.

- 5 -

(Doc. 75). If a contract provides for modification and the parties modify the contract in accord with the contract, no "new and independent consideration [is] required to support the modification." Harrison v. Tampa, 247 F. 569, 571-72 (S.D. Fla. 1918); 11 FLA. JUR. 2D *Contracts* § 77 (2009). Rather, "[t]he contract as modified [is] supported by the original consideration." In this instance, the contract for sale provides that the purchaser may request a modification, a "change order," to the contract for sale after acceptance. If the seller sends an executed a copy of the request to the purchaser, the seller is bound by the modification.[23] Because the parties executed a change order that complies with the parties' contract for sale, the modification requires no additional consideration and is enforceable.

Additionally, the defendant argues that the release is clear and unambiguous and should be "afforded [its] plain and ordinary meaning." (Doc. 75) In response, the plaintiffs argue that the release is ambiguous because (1) the release refers to a "restrictive covenant agreement" and fails to specify that the release applies only to the addendum and (2) the release fails to specify the "manner in which the property could be marketed or advertised prior to closing." (Doc. 81)

The existence of ambiguity in a contract is a question of law. Smith v. Shelton, 970 So. 2d 450, 451 (Fla. 4th DCA 2007); Action Nissan, Inc. v. Hyundai Motor Am., 617 F. Supp. 2d 1177, 1187 (M.D. Fla. 2008). If a contract is ambiguous, the contract's interpretation is a question of fact, precluding summary judgment. 970 So. 2d at 451. "'Whether a document is ambiguous depends on whether it is reasonably susceptible to

---

[23] Doc. 45-2. If the change order increases the purchase price of the home, the purchaser must increase the purchaser's deposit to bring the deposit up to five percent of the increased price.

- 6 -

more than one interpretation . . . true ambiguity does not exist merely because a document can possibly be interpreted in more than one manner.'"  970 So. 2d at 451 (quoting Lambert v. Berkley S. Condo. Ass'n, 680 So. 2d 588, 590 (Fla. 4th DCA 1996)).  "'[I]f one construction would lead to an absurd conclusion, such interpretation must be abandoned'" in favor of the interpretation that is "'consistent with reason and probability.'"  Am. Med. Intern. v. Scheller, 462 So. 2d 1, 7 (Fla. 4th DCA 1984) (quoting Paddock v. Bay Concrete Indus., Inc., 154 So. 2d 313, 316 (Fla. 2d DCA 1963)).[24]

In this instance, the release states only that "[a]s of 12/14/05, buyer is released from restrictive covenant agreement."  The parties' contract for sale has two sections—the disclosure of use restrictions in the contract for sale and the addendum to the contract for sale—to which the plaintiffs argue the language "restrictive covenant agreement" applies.  The contract for sale contains a paragraph entitled "Use Restrictions," which discloses (as required by Florida law)[25] that the property "is subject to the Declarations of Covenants, Conditions, and Restrictions and other recorded instruments of the community."  The paragraph asks the purchaser to acknowledge receipt of the declaration of restrictions and the governing documents of the homeowners association.  The purchaser acknowledges that, as an owner, the purchaser becomes subject to each restriction "including but not limited to membership

---

[24] See also James v. Gulf Life Ins. Co., 66 So. 2d 62, 63-64 (Fla. 1953) ("[t]he inconvenience, hardship, or absurdity of one interpretation of a contract or its contradiction of the general purpose of the contract is weighty evidence that such meaning was not intended when the language is open to an interpretation which is neither absurd nor frivolous and is in agreement with the general purpose of the parties.")

[25] See Fla. Stat. § 720.401.

- 7 -

in the applicable Homeowner Association."  The addendum to the contract for sale contains language by which the purchaser covenants not to "assign th[e] agreement, nor any rights [under the agreement], nor advertise, market, list for sale, sell, transfer, assign, gift or otherwise convey the Property, or any interest therein, for a period of two years after the date of closing."

Upon review, the only reasonable interpretation of the release is that the release applies only to the addendum.  The words "restrictive covenant agreement" in the release precisely identify the addendum, (1) which includes a restrictive covenant designated by the words "restrictive covenant" and (2) which the seller may revise or release without participation by the homeowners.  No reasonable construction of either the words or the history of this real estate transaction permit inclusion of the contract for sale's "Use Restrictions" disclosure within the words "restrictive covenant" in the release.  The "Use Restrictions" disclosure amounts neither to a restrictive covenant nor to an agreement of any kind but offers only the statutorily required disclosure to the buyer of the fact that the homeowners, not the seller, enjoy a panoply of rights and impose a panoply of restrictions outside the reach of the contract for sale and outside the power of the seller.[26]  In other words, the words "restrictive covenant agreement" in the release mean the "restrictive covenant" in the addendum and not the "Use

---

[26] A release from, or a modification of, a restrictive covenant requires the vote or assent of other owners affected by the covenant.  See, e.g., Harwick v. Indian Creek Country Club, 142 So. 2d 128 (Fla. 3rd DCA 1962) (finding unenforceable an agreement between the owner of a subdivision and certain, but not all, owners to relax certain use restrictions because the agreement lacked the assent of all owners in the subdivision); see also Indian Lake Maint., Inc. v. Oxford First Corp., 572 So. 2d 536 (Fla. 2nd DCA 1990); Blue Reef Holding Corp., Inc. v. Coyne, 645 So. 2d 1053 (Fla. 4th DCA 1994); Smith v. Butler Mountain Estates Prop. Owners Ass'n, Inc., 375 S.E.2d 905, 908 (N.C. 1989) ("[O]ne owner in a restricted subdivision cannot modify the restrictions without the agreement of all others.").

- 8 -

Restrictions," which are disclosed, but neither imposed nor enforced, by the contract for sale and which are neither a "restrictive covenant" nor an "agreement."

Although the release fails to specify the manner in which the plaintiffs may market the property, the release is not ambiguous. The plain language of the release relieves the plaintiffs—in accord with Bolus and Johnston's discussion following Gregory's cancer diagnosis—of the plaintiffs' obligation under the addendum. Therefore, the plaintiffs were no longer restricted "for a period of two years after the date of closing" from assigning the agreement, assigning any right under the agreement, or marketing for sale, conveying, or otherwise transferring the property. (Doc. 45-2) Nothing in the release modifies any obligation of the plaintiffs under the contract for sale.

Accordingly, no breach of the parties' agreement occurred as a result of the defendant's removing the plaintiffs' signs from the property before closing. The contract required the plaintiffs before entering the property to obtain permission from the defendant. Additionally, a restrictive covenant on the property required that any sign placed on the property conform to each requirement of the homeowners association.[27] Even assuming that the plaintiffs obtained permission to enter, and to place a sign on, the property, neither the plaintiffs nor the defendant could display a sign on the property without the approval of the homeowners association.

## *II. Trespass*

In the Silver Lake declaration of restrictions, a development easement is reserved in favor of the developer. (Doc. 75, Ex. E) The defendant argues that summary

---

[27] Therefore, as owner of the property, the defendant was obliged to remove any non-conforming sign from the property.

judgment is appropriate because the development easement permitted the defendant both to enter the plaintiffs' property after closing and to plant a tree. The plaintiffs argue that, because the defendant is neither the developer nor the assignee of the developer's right under the easement, the defendant possessed no right to enter the plaintiffs' property.

"'Trespass to real property is an injury to or use of the land of another by one having no right or authority.'" Glen v. Club Mediterranee, S.A., 450 F.3d 1251,1254 n.1 (11th Cir. 2006) (quoting Guin v. City of Riviera Beach, 388 So. 2d 604, 606 (Fla. 4th DCA 1980)). "The usual measure of damages for trespass to real property is the difference in value of the property before and after the trespass." Horn v. Corkland Corp., 518 So. 2d 418, 420 (Fla. 2d DCA 1988); see also Atlantic C.L.R. Co. v. Rutledge, 156 So. 563, 565 (Fla. 1935); Leonard v. Nat Harrison Assoc., Inc., 122 So. 2d 432, 433 (Fla. 2d DCA 1960) ("[T]he plaintiff is entitled to at least nominal damages on proof of entry without consent."). If a plaintiff fails to prove actual damages, "the plaintiff is entitled to a judgment for nominal damages and costs." State v. Sarantopoulos, 604 So. 2d 551, 555 n.7 (Fla. 2d DCA 1992) (citing 122 So. 2d 432).

In this instance, the defendant fails to prove that the plaintiffs consented to the defendant's entry onto the plaintiff's property.[28] Under the language of the declaration, the plaintiffs consented to entry by the developer onto the plaintiffs' property.[29] No

---

[28] The defendant possesses the burden of proving an affirmative defense. See Hough v. Menses, 95 So. 2d 410 (Fla. 1957).

[29] See Doc. 75-6. In pertinent part, the "Development Easement" states that the "[d]eveloper reserves an easement for itself or its nominees over, upon, across, and under Silver Lake as may be
(continued...)

record exists of the developer's assigning the developer's right to the defendant.[30] Because the defendant admits both that the defendant is not the developer and that the defendant lacks proof of an assignment of the developer's right, the defendant fails to prove an affirmative defense to the plaintiffs' trespass claim.

However, the plaintiffs admit that even without the tree, the plaintiffs' backyard would not accommodate the pool the plaintiffs desired.[31] Indeed, Bolus testified that Bolus refrained from obtaining a formal quote from a swimming pool installer (with whom Bolus consulted before closing) because the installer informed Bolus before closing that a standard-sized pool would not fit in the backyard. The defendant's planting a tree was not the cause of the plaintiffs' inability to install a swimming pool. Thus, the plaintiffs fail to show that (1) the plaintiffs suffered any diminution in the value of the plaintiffs' property and (2) the plaintiffs are entitled to more than nominal damages and costs as a result of the defendant's trespass.

## Conclusion

Accordingly, the defendant's motion for summary judgment (Doc. 75) is **GRANTED IN PART**. The motion (Doc. 75) is **GRANTED** as to count one of the plaintiffs' second amended complaint (Doc. 45). The motion is **DENIED** as to count three. The parties are **ORDERED TO SHOW CAUSE** no later than **ten (10) days** after

---

[29](...continued)
required in connection with the development of Silver Lake . . . ."

[30] July 16, 2009, Deposition of Jeffrey Cooper ("Cooper Depo.") at 4-8. The "Development Easement" says that "[d]eveloper may non-exclusively assign its rights hereunder to each Builder." (Doc. 75-6)

[31] Bolus Depo. at 89-93. Even if the tree was removed, only a "narrow, five, maybe six foot, seven foot wide . . . [lap] pool" would fit in the backyard. Bolus Depo. at 89-91.

- 11 -

entry of this order why judgment on count three for nominal damages in the amount of $1.00 should not be granted in favor of the plaintiffs.

ORDERED in Tampa, Florida, on December 9, 2009.

*[signature]*
STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE